In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00090-CR
______________________________

FREDDIE JEROME HARGRAVE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee

                                              

On Appeal from the 8th Judicial District Court
Franklin County, Texas
Trial Court No. 7,531

                                                 

Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross

O P I N I O N

          Freddie Jerome Hargrave pled guilty to forgery without a plea agreement.

 The trial
court accepted the plea of guilty, finding it was freely and voluntarily made. Following the
filing of a presentence investigation (PSI) report and testimony from Hargrave, punishment
was assessed by the trial court at two years' confinement and restitution in the amount of
$514.14. The trial court granted the State's motion to cumulate and ordered Hargrave's
sentence for forgery be served consecutively with a term he was then serving for burglary
of a habitation.

 
          Hargrave contends on appeal that (1) his guilty plea was not made voluntarily with
a full understanding of its consequences; (2) he did not properly waive his right to a trial
by jury; (3) the State did not introduce evidence showing his guilt as required by the Texas
Code of Criminal Procedure; and (4) his trial counsel was ineffective for failing to call
rebuttal witnesses during his punishment hearing.
Voluntariness of Guilty Plea
          Hargrave first contends his guilty plea was not made voluntarily with full knowledge
of its consequences.

 He contends this is evidenced by his many assertions of being
confused at both the plea hearing and the subsequent punishment hearing. 
          No plea of guilty or nolo contendere shall be accepted by a trial court unless it
appears the defendant is mentally competent and the plea is free and voluntary. See Tex.
Code Crim. Proc. Ann. art. 26.13(b) (Vernon Supp. 2004). When reviewing the
voluntariness of a guilty plea, the record is viewed as a whole. See Williams v. State, 522
S.W.2d 483, 485 (Tex. Crim. App. 1975). Voluntariness of a plea is determined by the
totality of the circumstances. See Griffin v. State, 703 S.W.2d 193, 196 (Tex. Crim. App.
1986).
          A finding that a defendant was duly admonished creates a prima facie showing that
a guilty plea was entered knowingly and voluntarily. Ex parte Gibauitch, 688 S.W.2d 868,
871 (Tex. Crim. App. 1985). Further, when a defendant indicates at the plea hearing he
or she understands the nature of the proceeding and is pleading guilty because the
allegations in the indictment are true, not because of any outside pressure or influence, the
defendant has a heavy burden to prove on appeal that his or her plea was involuntary. 
Crawford v. State, 890 S.W.2d 941, 944 (Tex. App.—San Antonio 1994, no pet.). 
          Article 26.13(a) requires the trial court to admonish a defendant, before accepting
his or her plea, of (1) the punishment range, (2) the fact that the state's sentencing
recommendation is not binding on the court, (3) the limited right to appeal in cases where
the court follows a plea agreement, (4) the possibility of deportation, and (5) the fact the
defendant would have to register as a sex offender if the conviction was for a sex offense. 
Tex. Code Crim. Proc. Ann. art. 26.13(a) (Vernon Supp. 2004). 
          The purpose of the admonishments is to ensure the defendant enters his or her plea
with full knowledge of the consequences. See Carranza v. State, 980 S.W.2d 653, 656
(Tex. Crim. App. 1998). The admonishments under Article 26.13(a) are not constitutionally
required, and their purpose and function is to assist the trial court in making the
determination that a guilty plea is knowingly and voluntarily entered. See Aguirre-Mata v.
State, 992 S.W.2d 495, 498–99 (Tex. Crim. App. 1999); Alvarez v. State, 63 S.W.3d 578,
581 (Tex. App.—Fort Worth 2001, no pet.).
          At the plea hearing, the trial court properly admonished Hargrave concerning all the
relevant and direct consequences of his guilty plea. The trial court properly admonished
Hargrave that the punishment range for the offense charged was confinement for 180 days
to two years. See Tex. Code Crim. Proc. Ann. art. 26.13(a)(1). In addition, although not
required to do so, the court admonished Hargrave that the court had discretion in his case
to make the sentence run consecutively instead of concurrently. See Tex. Code Crim.
Proc. Ann. art. 42.08 (Vernon Supp. 2004); Simmons v. State, 457 S.W.2d 281, 283 (Tex.
Crim. App. 1970). The court also admonished Hargrave on "up front" time he might be
required to serve in the event he was placed on community supervision. Hargrave stated
he understood all of the admonishments. 
          The trial court did not explicitly admonish Hargrave of the fact that the State's
sentencing recommendation was not binding on the court, of the limited right to appeal in
cases where the court follows a plea agreement, of the possibility of deportation, or of the
fact he would have to register as a sex offender if the conviction was for a sex offense. 
None of these admonishments, however, were relevant to Hargrave and could not have
factored in his decision to enter a plea of guilty.

 The court substantially complied with
Article 26.13(a), and Hargrave had full knowledge of the relevant consequences of his
guilty plea.
          The trial court also inquired into Hargrave's competency. Hargrave stated that he
knew what was going on in the courtroom, that he knew the date, and that he was able to
talk with his attorney and understand the advice he was given. Hargrave also stated that
he was pleading guilty because he was guilty and for no other reason, that he was pleading
guilty freely and voluntarily, and that no one had coerced him into entering a guilty plea. 
          Hargrave contends his guilty plea was not made voluntarily with full knowledge of
its consequences and asserts this is evidenced by the confusion he displayed at the
pretrial hearing. Hargrave made several assertions he was confused and did not
understand the proceedings. Each time, however, his questions were answered and the
nature of the proceedings explained to him.

 At the end of the plea hearing, Hargrave
stated he understood the proceedings and was entering his guilty plea freely and
voluntarily. Hargrave is not specific as to what he was confused about and fails to state
the specific consequences of which he was not made aware. The record contains no
evidence tending to indicate that Hargrave was misled into making his guilty plea or
harmed thereby. Based on the totality of the circumstances and the proceedings as a
whole, Hargrave has not shown that his plea was involuntary. 
Waiver of Right to Jury Trial
          Hargrave next contends he did not waive his right to trial by jury in writing, in open
court, and therefore the judgment and sentence against him must be reversed. 
          The Code of Criminal Procedure requires that, to waive the right to a trial by jury, a
defendant must make such waiver in person and in writing, in open court, with the consent
and approval of the court and the attorney representing the state. Tex. Code Crim. Proc.
Ann. art. 1.13(a) (Vernon Supp. 2004). In this case, the State concedes there was no
written waiver of a jury trial. We therefore find there was error and consider now whether
such error was harmful.
          The failure to have a written waiver of the right to a jury trial is subject to harm
analysis. Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); Salinas v. State, 987
S.W.2d 922, 923 (Tex. App.—Corpus Christi 1999, no pet.). This is a statutory error, not
a constitutional error. Ex parte Sadberry, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993). 
Therefore, where no waiver of jury trial has been secured, the reviewing court must
determine whether the defendant's substantial rights have been affected. Salinas, 987
S.W.2d at 923. If no substantial rights have been affected, the error must be disregarded.
Tex. R. App. P. 44.2(b).
          A number of our sister courts have chosen to adopt the federal jury waiver test in
cases where no written waiver appears in the record. Lopez v. State, 71 S.W.3d 511 (Tex.
App.—Fort Worth 2002, no pet.); Whitmire v. State, 33 S.W.3d 330 (Tex. App.—Eastland
2000, no pet.); Loveless v. State, 21 S.W.3d 582 (Tex. App.—Dallas 2000, pet. ref'd). The
federal jury waiver test provides that a defendant's substantial rights are affected unless
the record clearly reflects that the defendant personally gave express consent in open
court, intelligently and knowingly. Lopez, 71 S.W.3d 511. The Texas Court of Criminal
Appeals has recently rejected this test, finding that the ordinary harm analysis standard
under Tex. R. App. P. 44.2(b) should be applied, without the presumption of harmfulness
which the federal test imparts. See Johnson v. State, 72 S.W.3d 346, 348 (Tex. Crim.
App. 2002); Garza v. State, 77 S.W.3d 292, 292 (Tex. Crim. App. 2002); see also Jackson
v. State, 76 S.W.3d 798, 801 (Tex. App.—Corpus Christi 2002, no pet.). In Johnson, 72
S.W.3d at 348–49, the Texas Court of Criminal Appeals held that the lack of a written jury
waiver is not harmful when the record reflects the defendant was aware of his or her right
to a jury trial and waived that right.
          The trial court informed Hargrave he was entitled to a jury trial. Therefore, Hargrave
was aware of his right to a jury trial. The trial court then inquired whether Hargrave wanted
a jury trial. Hargrave stated he wanted a trial before the court four different times. This
desire and request for a trial before the court was never denied, repudiated, withdrawn, or
complained of by Hargrave before, during, or after the proceedings. Even on appeal,
Hargrave does not complain that he did not know of his right to a jury trial or that he was
deprived of his right to trial by jury. He also does not claim on appeal that he wanted a jury
trial or that he did not intend to waive a jury trial. Accordingly, the record reflects that
Hargrave was aware of his right to a jury trial and that he waived that right, and we cannot
say he was harmed by the failure to file a written waiver. See id. 
Plea Substantiation
          Hargrave further contends there was no evidence offered to substantiate his guilty
plea and the judgment entered. He contends no judicial confession or stipulation of
evidence was offered or admitted, and asks this Court to reverse the trial court's judgment
and sentence imposed in this case. 
          When a defendant waives his or her right to a jury and pleads guilty to a felony, the
Code of Criminal Procedure requires the state to introduce evidence into the record
showing the defendant's guilt to serve as the basis for the trial court's judgment. See Tex.
Code Crim. Proc. Ann. art. 1.15 (Vernon Supp. 2004); McDougal v. State, 105 S.W.3d
119, 120 (Tex. App.—Fort Worth 2003, pet. ref'd). A judicial confession, standing alone,
provides sufficient evidence to support the trial court's judgment and satisfies Article 1.15. 
Lord v. State, 63 S.W.3d 87, 92 (Tex. App.—Corpus Christi 2001, no pet.) (citing Dinnery
v. State, 592 S.W.2d 343, 353 (Tex. Crim. App. [Panel Op.] 1979) (op. on reh'g); Williams
v. State, 483 S.W.2d 460, 461 (Tex. Crim. App. 1972)). An oral confession may constitute
sufficient evidence to support the judgment and to satisfy Article 1.15. See Tex. Code
Crim. Proc. Ann. art. 1.15; Dinnery, 592 S.W.2d at 353; Lord, 63 S.W.3d at 92 (holding
oral exchange with court at time plea accepted constituted judicial confession sufficient to
support judgment and satisfy Article 1.15); McFarland v. State, 644 S.W.2d 17, 18 (Tex.
App.—Dallas 1982, no pet.) (defendant's oral judicial confession he is pleading guilty just
as he is charged in indictment sufficient evidence to support plea).
            While the judicial confession in this case is not exemplary,

 Hargrave did state at the
plea hearing and at the punishment hearing he committed the forgery offense. He
specifically stated during a conversation on the nature of the guilt/innocence phase of trial
that, "I said I committed it. I admit I committed the forgery." After the indictment was read
to Hargrave, he pled guilty and stated he was pleading guilty because he was guilty and
for no other reason. See Dinnery, 592 S.W.2d at 353; Cooper v. State, 573 S.W.2d 533,
535 (Tex. Crim. App. [Panel Op.] 1978); Williams, 483 S.W.2d at 461; Lord, 63 S.W.3d at
92. During the punishment hearing, the PSI report was admitted into evidence. That
report detailed how Hargrave admitted using his parents' checks without their permission
to buy drugs, liquor, and the services of prostitutes. Hargrave took the stand and admitted
the report was true and correct, save for a few irrelevant exceptions.

 See Lopez v. State,
852 S.W.2d 695, 697 (Tex. App.—Corpus Christi 1993, no pet.) (evidence introduced
during contested penalty hearing that shows defendant's guilt for offense will substantiate
guilty plea). For those reasons, we hold that Hargrave's oral admissions in open court
satisfy Article 1.15. 
Ineffective Assistance of Counsel
          Hargrave also contends his trial counsel provided ineffective assistance. Hargrave
points to defense counsel's questioning of him during the sentencing hearing, which he
contends did not elicit any extenuating or mitigating evidence to the findings and
conclusions contained in the PSI report. Hargrave also points to defense counsel's failure
to call Hargrave's family members, who were present at the punishment hearing, to testify
regarding the relationship Hargrave had with his terminally ill father and to offer evidence
in rebuttal to the State's motion to cumulate. 
          The standard of testing claims of ineffective assistance of counsel is set out in
Strickland v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional
claims in Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). The adequacy
of counsel's performance during the punishment phase of trial is also reviewed under the
Strickland standard. See Hernandez v. State, 988 S.W.2d 770, 772–73 (Tex. Crim. App.
1999). To prevail on this claim, an appellant must prove by a preponderance of the
evidence (1) that counsel's representation fell below an objective standard of
reasonableness, and (2) that the deficient performance prejudiced his or her defense. 
Strickland, 466 U.S. at 686; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). 
To meet this burden, an appellant must prove that the attorney's representation fell below
the standard of prevailing professional norms and that there is a reasonable probability
that, but for the attorney's deficiency, the result of the trial would have been different. Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant
must prove that counsel's representation so undermined the proper functioning of the
adversarial process that the trial cannot be relied on as having produced a just result. 
Strickland, 466 U.S. at 686.
          Under the Strickland test, an appellant bears the burden of proving ineffective
assistance by a preponderance of the evidence. Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994). Allegations of ineffectiveness of counsel must be firmly founded
in the record. Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983). Judicial
scrutiny of counsel's performance must be highly deferential, and we must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance; in other words, the defendant must overcome the presumption of sound trial
strategy. Strickland, 466 U.S. at 689; see also Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999); Cochran v. State, 78 S.W.3d 20, 23 (Tex. App.—Tyler 2002, no
pet.). Further, a "professionally unreasonable" error by trial counsel does not require a
reversal if the error had no effect on the judgment. Strickland, 466 U.S. at 691. The
constitutional right to counsel, whether counsel is appointed or retained, does not mean
errorless counsel or counsel whose competency or adequacy is to be judged by hindsight. 
Mercado v. State, 615 S.W.2d 225 (Tex. Crim. App. [Panel Op.] 1981); Ex parte Prior, 540
S.W.2d 723, 726 (Tex. Crim. App. 1976); Duran v. State, 505 S.W.2d 863, 866 (Tex. Crim.
App. 1974). An appellant challenging trial counsel's performance faces a difficult burden
and a substantial risk of failure. See Thompson, 9 S.W.3d at 813. In the absence of a
record demonstrating the basis for trial counsel's action or inaction, a defendant will rarely
be able to rebut the presumption that counsel's action or inaction constituted reasonable
trial strategy. See id. at 814.
          At the punishment hearing, the trial court noted the presence of Hargrave's sister
and her husband in the courtroom and thanked them for being there. They were not called
by the defense to testify. Hargrave claims his family members would have testified
regarding his relationship to his ill father and provided rebuttal testimony to the State's
motion to cumulate. The record, however, does not support his claim. There is nothing
in the record to indicate what testimony Hargrave's family members would have given, or
whether their testimony would have benefited him. Therefore, we reject Hargrave's claim
of ineffective assistance of counsel based on the failure to secure their testimony. See
King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (counsel's failure to call witnesses
at guilt/innocence and punishment stages irrelevant absent showing such witnesses were
available and appellant would benefit from testimony); Hunnicutt v. State, 531 S.W.2d 618,
625 (Tex. Crim. App. 1976) (defendant may base ineffective assistance claim on attorney's
failure to present witnesses only if defendant can show witnesses available and testimony
would have benefited defendant). In addition, the record is silent as to the reasons why
defense counsel chose not to place them on the stand, and we cannot speculate as to why
counsel acted as he did. See Jackson, 877 S.W.2d at 771. An allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996). When confronted with a silent record, we are neither required to
speculate on the reasons for counsel's actions, nor can we presume inaction on counsel's
part. 
          Hargrave also points to defense counsel's questioning of him at the punishment
hearing as ineffective assistance of counsel. At the punishment hearing, defense counsel
questioned Hargrave concerning the PSI report and whether it contained any false
allegations. Hargrave contended that some of the allegations were false, but that the
remaining portions of the report were true and correct. There is no evidence in the record
that any additional extenuating or mitigating circumstances existed which were not in the
report, or the reasons for defense counsel questioning Hargrave as he did. Because there
is nothing to explain whether counsel's actions were of strategic design or the result of
negligent conduct, we conclude the record is insufficient to support Hargrave's complaint
on appeal. See Thompson, 9 S.W.3d at 813 (any allegation of ineffectiveness must be
firmly founded in record, and record must affirmatively demonstrate alleged
ineffectiveness); Jackson, 877 S.W.2d at 771 (appellate court not required to speculate on
counsel's decision-making processes or to imagine reasons why counsel acted or failed
to act in particular manner). Even assuming these actions showed trial counsel's
performance was deficient, Hargrave cannot show that, but for these deficiencies, there
is a reasonable probability the result of the proceeding would have been different. We
overrule Hargrave's last point of error.
Conclusion
          We affirm the judgment of the trial court.

                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      June 17, 2004
Date Decided:         July 13, 2004

Do Not Publish

stems] was run by Mr. Maashoff and [International] was run by Mr. Cooney. But
affiliate status is not determined simply on the basis of a single majority stock owner
or operational control. 

 . . . . 

 In the end the question is whether the parties to the Settlement Agreement
intend to include [International] as an affiliate of [Tracking Systems] in the release
contained in the settlement agreement. The arbitrator finds they did not. 

 

 For all of these reasons, the arbitrator finds that [International] was not an
affiliate of [Tracking Systems] for the purposes of having released [Xtria] from all
claims of [International] at the time of the [Tracking Systems] Settlement Agreement
with [Xtria] in July of 2006. 

 "An arbitrator's judgment has the same effect as a judgment of a court of last resort; a trial
court cannot substitute its judgment for that of the arbitrator's." Id. at 901. Nor should dictum in a
parallel federal opinion, issued after confirmation, trump a rationally inferable decision made by an
arbitrator. Xtria's first point of error is overruled. 

 B. Gross Mistake

 Gross mistake is a Texas state common-law standard that has been used to attack arbitration
awards. Callahan & Assocs. v. Orangefield Indep. Sch. Dist., 92 S.W.3d 841, 844 (Tex. 2002). A
gross mistake implies bad faith and/or failure to exercise honest judgment on the part of an arbitrator. 
Werline, 209 S.W.3d at 897-98; JJ-CC, Ltd., 1998 WL 788804, at *4. It does not mean an egregious
mistake of fact or law. JJ-CC, Ltd., 1998 WL 788804, at *4. Gross mistake results in a decision that
is arbitrary or capricious. Werline, 209 S.W.3d at 898. A judgment rendered after honest
consideration given to conflicting claims, no matter how erroneous, is not arbitrary or capricious. 
Id. 

 Xtria's arguments regarding gross mistake closely mirror those suggesting the arbitrator
manifestly disregarded the law. It did not bring forth any evidence to suggest the arbitrator's decision
was made in bad faith, or that the arbitrator failed to exercise honest judgment. A review of the
arbitration record and award demonstrates the arbitrator considered conflicting claims and relevant
law after hearing evidence and requesting post-hearing briefs. For the reasons employed above, we
do not find the arbitrator's decision was arbitrary or capricious. Xtria's second point of error is
overruled. 

 C. Attorney's Fees 

 International seeks attorney's fees under Rule 45 of the Texas Rules of Appellate Procedure. 
See Tex. R. App. P. 45. In the pursuit of such relief, it is International's burden to show that Xtria
"had no reasonable ground to believe that the judgment would be reversed." In re Estate of Davis,
216 S.W.3d 537, 548 (Tex. App.--Texarkana 2007, pet. denied); St. Louis Sw. Ry. Co. v. Marks, 749
S.W.2d 911, 915 (Tex. App.--Texarkana 1998, pet. denied). In order for this Court to award the
requested $25,000, it must first find that Xtria's appeal is frivolous. Tex. R. App. P. 45. We do not
make such a finding. Even though Xtria's argument failed to convince this Court, it had a reasonable
basis in law and constituted an informed, good-faith challenge to the trial court's judgment. Davis,
216 S.W.3d at 548; Long Trusts v. Atl. Richfield Co., 893 S.W.2d 686, 689 (Tex. App.--Texarkana
1995, no writ). Therefore, Rule 45 sanctions are inappropriate. 

V. CONCLUSION

 We affirm the trial court's judgment confirming the arbitration award. 

 Bailey C. Moseley

 Justice

Date Submitted: April 30, 2009

Date Decided: May 15, 2009

 
1. This case was transferred to this Court from the Fifth District Court of Appeals in Dallas as
part of the Texas Supreme Court's docket equalization program. Except as noted and considered
below, we are not aware of any conflict between the precedent of the Dallas Court and the precedent
of this Court on any issue relevant in this appeal. See Tex. R. App. P . 41.3.
2. International is a holding company. 
3. Nothing in this contract limits International's responsibilities to the e.Liens software product.
4. Prior to the International Sales Agreement, e.Liens was worth $300,000-$400,000. It sold
for $5.4 million. 
5. The Tracking Systems-Xtria Agreement was defined as the Asset Purchase Agreement
entered into by Tracking Systems dated June 1, 2000.
6. Xtria acknowledged the California Code definition of "affiliate" is the same in Texas. Tex.
Bus. Orgs. Code Ann. 1.002(1) (Vernon 2008). 
7. From 1999-2000, Cooney was involved in the e.Liens business with Tracking Systems and
may have managed it for a period of six months. Cooney claimed this business plan was not put into
place and that he probably put the plan together to help Maashoff. Some Tracking Systems
documents also list Cooney as secretary, although he claims "this was . . . purely an administrative
function" and does not remember being on the board of Tracking Systems. 
8. Owensby explained why Xtria should have bought out International. The e.Liens package
was attached to the International Sales Agreement calling for fifteen percent commission to
International. Since ISO already had a sales force, the package was automatically worth fifteen
percent more to them than it should have been, thereby elevating the built-in revenue stream. Xtria
knew and benefitted from this because the value of the e.Liens package they were selling also
increased by fifteen percent. Cooney presents the theory that under the International Sales
Agreement, International exclusively owned the marketing rights which Xtria did not have the right
to sell to ISO without justly compensating International. 
9. The evident partiality issue was abandoned on appeal. 
10. While the International Sales Agreement contained a Texas choice of law clause, the United
States Fifth Circuit and the Texas Supreme Court have held "an arbitration clause and a generic
choice-of-law clause . . . [do not] demonstrate a clear intent to displace the FAA's vacatur standards
and replace them with ones borrowed from [state] law." Action Indus., Inc., 358 F.3d at 340, 342.
11. Similarly, the Texas General Arbitration Act cannot expand grounds for review beyond
those enumerated in contract. Quinn v. Nafta Trades, Inc., 257 S.W.3d 795, 799 (Tex. App.--Dallas
2008, pet. filed). 
12. The Southern District developed this view after abandoning previous post-Hall applications
of manifest disregard. Halliburton Energy Servs., Inc. v. NL Indus., 553 F.Supp.2d 733, 753 (S.D.
Tex. 2008) (applying manifest disregard standard "out of an abundance of caution").
13. While Xtria argues that the arbitrator manifestly disregarded Texas law by employing
California law, we find the laws of the two states to be substantially similar with respect to the issues
presented in this case. 
14. During oral argument, Xtria first presented the Court with a novel argument. Attempting
to assert a particular statutory ground of vacatur for the first time and in an apparent effort to
circumvent the effect of the Fifth Circuit's recent ruling that nonstatutory grounds for vacatur are no
longer viable, Xtria argued that the arbitrator exceeded his powers (a statutory ground for vacatur
pursuant to 9 U.S.C. 10) by manifestly disregarding the law in taking the step of effectively
re-writing the Tracking Systems-Xtria Settlement and ignoring conclusive evidence on the affiliate
issue. The authority of arbitrators is derived from the arbitration agreement and is limited to a
decision of the matters submitted therein either expressly or by necessary implication. Cameron Int'l
Corp. v. Vetco Gray Inc., No. 14-07-00656-CV, 2009 WL 838177, at *9 (Tex. App.--Houston [14th
Dist.] Mar. 31, 2009, no pet. h.) (mem. op.) (citing Gulf Oil Corp. v. Guidry, 160 Tex. 139, 143, 327
S.W.2d 406, 408 (1959)). Arbitrators exceed their powers when they decide matters that are not
before them. Barsness v. Scott, 126 S.W.3d 232, 241 (Tex. App.--San Antonio 2003, pet. denied). 
Xtria has not argued the arbitrator in this case decided a matter that was not before him. Thus, not
only was Xtria's argument waived, it was without merit. Graham-Rutledge & Co. v. Nadia Corp.,
No. 05-07-01579-CV, 2009 WL 866206, at *5 (Tex. App.--Dallas Apr. 1, 2009, no pet. h.)
(rejecting argument that arbitrator exceeded her powers when she "rewrote the lease contract
between the parties" since it was ambiguous); Cameron Int'l Corp., 2009 WL 838177, at *9 ("A
complaint that the evidence does not support the arbitrator's award, however, is not a complaint that
the arbitrator exceeded his powers.").
15. In fact, the federal court even stated the arbitrator did not make a finding on the affiliate
issue. Xtria L.L.C., 2008 WL 4692855, at *6.