Tracey Lynn WHITMIRE, Appellant,

v.

STATE of Texas, Appellee.

Nos. 11–99–00204–CR to
11–99–00209–CR.

Court of Appeals of Texas,
Eastland.

Sept. 29, 2000.

Barbara L. Wylie, Weatherford, for appellant.

Tim Ford, Dist. Atty., Palo Pinto, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

Appellant pleaded guilty in open court to six charges of delivering drugs. The trial court accepted her guilty plea to four of the offenses and entered a judgment of guilty on those pleas. The trial court withdrew sua sponte her guilty plea to two of the offenses but then found her guilty.[1] One of the offenses to which she pleaded guilty was a first degree felony; the trial court assessed appellant's punishment at confinement for 75 years and a $5,000 fine.[2] Another offense to which she pleaded guilty was a state jail felony; the trial court assessed her punishment at confinement for 2 years and a $2,000 fine.[3] The remaining four offenses were second degree felonies; the trial court assessed her punishment for each at confinement for 20 years and a $3,000 fine.[4] We hold that appellant was not harmed by the absence of a written jury waiver or a written consent to stipulate evidence. We also hold that appellant's pleas were voluntarily, intelligently, and knowingly made. Therefore, we affirm.[5]

### Background Facts

Appellant does not challenge the sufficiency of the evidence. The record shows that, on January 13, 1998, appellant met

1. Appellant disputed the occurrence of two of the offenses alleged in the indictments to have occurred on January 13, 1998. She later admitted, after the trial court withdrew her guilty pleas, that the offenses did occur around that time.

2. First degree felonies are punishable by confinement for life or a term of 5 to 99 years and a fine of up to $10,000. TEX. PENAL CODE ANN. § 12.32 (Vernon 1994).

3. State jail felonies are punishable by confinement for a term of 180 days to 2 years and a fine of up to $10,000. TEX. PENAL CODE ANN. § 12.35(a) & (b) (Vernon 1994).

4. Second degree felonies are punishable by confinement for a term of 2 to 20 years and a fine of up to $10,000. TEX. PENAL CODE ANN. § 12.33 (Vernon 1994).

5. Cause No. 11–99–00204–CR—delivery of methamphetamine, confinement for 20 years and a $3,000 fine.

> Cause No. 11–99–00205–CR—delivery of cocaine, confinement for 2 years and a $2,000 fine.
> Cause No. 11–99–00206–CR—delivery of methamphetamine, confinement for 20 years and a $3,000 fine.
> Cause No. 11–99–00207–CR—delivery of cocaine, confinement for 75 years and a $5,000 fine.
> Cause No. 11–99–00208–CR—delivery of amphetamine, confinement for 20 years and a $3,000 fine.
> Cause No. 11–99–00209–CR—delivery of methamphetamine, confinement for 20 years and a $3,000 fine.

with a confidential informant, Michael Donald Whitley, who was working for the Cross Timbers Narcotics Task Force. Whitley met with appellant as part of a "controlled buy" to gather evidence for the Task Force. Whitley purchased 2.74 grams of what was later determined to be amphetamine and 3.76 grams of what was later determined to be methamphetamine.[6] Whitley also recorded the transaction on two audiotapes.

On May 13, 1998, Whitley again met with appellant. This time, Whitley introduced appellant to an undercover Task Force agent, George Courtney. Courtney posed as "James," a "strong-arm" or debt collector, from Fort Worth who wanted to purchase drugs. During another controlled buy from appellant on May 13, Courtney purchased 3.32 grams of what was later determined to be methamphetamine.[7] This transaction was also recorded on audiotape by Whitley and Courtney.

On May 21, 1998, Courtney, as "James," executed another controlled buy. He purchased from appellant 3.28 grams of what was later determined to be methamphetamine and .33 gram of what was later determined to be cocaine.[8] Courtney recorded this transaction. He then arranged for appellant to get him an ounce of cocaine. He returned on May 22, 1998, and purchased 24.34 grams of what was later confirmed to be cocaine.[9] Courtney recorded this transaction as well.

6. Delivery of an amount of more than 1 gram and less than 4 grams of either of these drugs is a second degree felony. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(c) & 481.113(c) (Vernon Supp.2000).

7. This is also a second degree felony. Section 481.112(c).

8. This delivery of methamphetamine is a second degree felony. Section 481.112(c). The delivery of less than 1 gram of cocaine is a state jail felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp. 2000).

9. The delivery of more than 4 grams and less than 200 grams of cocaine is a first degree

*Absence of Written Jury Waiver*

Appellant pleaded guilty after the jury panel had been summoned but before voir dire began. Appellant argues in her first issue that the trial court erred in dismissing the jury panel and in hearing evidence to support her guilty pleas without first having appellant sign a written waiver of her right to a jury and filing the waiver in the record. She argues that the absence from the record of a signed jury waiver, as required by TEX. CODE CRIM. PRO. ANN. arts. 1 .13 and 1.15 (Vernon Supp. 2000),[10] violates her constitutional right to a jury. See U.S. CONST. amends. VI and XIV; TEX. CONST. art. I, § 15; see also TEX. CODE CRIM. PRO. ANN. art. 1.12 (Vernon 1977). She further argues, even if such error is subject to a harm analysis under TEX.R.APP.P. 44.2(a), that either: (1) whether the error caused harm cannot be shown beyond a reasonable doubt or (2) no meaningful harm analysis can be performed. We agree that error occurred but hold it to be statutory error rather than constitutional error. We also hold that a harm analysis may be performed, and we find that the error did not affect appellant's substantial rights.

■ Under both the federal and state constitutions, appellant enjoys the right to have her case decided by a jury of her peers. Article I, section 15, of the Texas Constitution, provides that "[t]he right of trial by jury shall remain inviolate." Neither constitution, however, requires that

felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Vernon Supp.2000).

10. Article 1.13(a) provides that a defendant in a noncapital felony case has the right to waive trial by jury, "conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State." The signed, written jury waiver must be filed "in the papers of the cause before the defendant enters his plea." Article 1.15 provides that a defendant may waive his right to a jury trial only "in accordance with [Article] 1.13."

appellant must execute a written statement to waive her right to a jury. Written waiver is required only by the Code of Criminal Procedure. *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex.Cr.App.1993). Articles 1.13 and 1.15 impose a mandatory requirement on the trial court to file a signed, written jury waiver in the papers of the case. By failing to observe that mandatory requirement, the trial court erred.

■ We next must determine whether the trial court committed reversible error. In *Meek v. State*, 851 S.W.2d 868 (Tex.Cr. App.1993), the Court of Criminal Appeals held that the error of failing to comply with Article 1.13 was not subject to a harm analysis. Since *Meek*, however, the court decided *Cain v. State*, 947 S.W.2d 262 (Tex.Cr.App.1997), in which it held:

> Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, *or any other mandatory requirement*, is categorically immune to a harmless error analysis. (Emphasis added)

*Cain v. State, supra* at 264; see *Carranza v. State*, 980 S.W.2d 653 (Tex.Cr.App. 1998). More recently, the Rules of Appellate Procedure were amended to require a separate analysis for constitutional and non-constitutional errors in criminal cases. The appellate court must reverse a case in which there is constitutional error unless the court finds beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Rule 44.2(a). TEX.R.APP.P. 44.2(b) directs the appellate court to disregard "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights."

In *Sadberry*, the Court of Criminal Appeals held that the written waiver required by Article 1.13 is a "procedural [rule] designed to safeguard constitutional rights."

This holding is consistent with the court's recent holding that the admonishments prescribed in TEX. CODE CRIM. PRO. ANN. art. 26.13(a) (Vernon Supp.2000) are not constitutionally required but are designed to assist the trial court in determining whether a plea is knowingly and voluntarily entered. *Aguirre–Mata v. State*, 992 S.W.2d 495, 499 (Tex.Cr.App.1999). Similarly, the requirement of a written jury waiver is intended only to assist the trial court and the appellate courts in determining that an appellant has intentionally relinquished his or her known right to a jury trial. See *Ex parte Sadberry, supra*; see also Article I, section 15 ("The Legislature shall pass such laws as may be needed to regulate the [right to trial by jury], and to maintain its purity and efficiency"); *Aguirre–Mata v. State, supra.*[11]

In *Salinas v. State*, 963 S.W.2d 889 (Tex. App.—Corpus Christi 1998), the court affirmed a conviction from a guilty plea even though it found error in the trial court's failure to file a signed, written jury waiver in the record. The Court of Criminal Appeals vacated the judgment and remanded the case for a harm analysis under *Cain. Salinas v. State*, 980 S.W.2d 219 (Tex.Cr. App.1998). On remand, the Corpus Christi court held that the failure to follow the mandate of Article 1.13 was statutory error and conducted a harm analysis under Rule 44.2(b). Because the defendant changed his plea to guilty only after a jury trial commenced, the court held that he knew of his right to a jury trial and knowingly relinquished that right. Thus, the error was harmless. *Salinas v. State*, 987 S.W.2d 922 (Tex.App.—Corpus Christi 1999, no pet'n).

At least three other courts of appeals have analyzed harm under Rule 44.2(b) in cases involving a failure to observe Article 1.13. See *Loveless v. State*, 21 S.W.3d 582 (Tex.App.—Dallas 2000, pet'n filed); *Tra-*

---

11. The presence of a signed, written jury waiver would also obviate the need for this

discussion on appeal.

*han v. State,* 991 S.W.2d 936 (Tex.App.— Houston [1st Dist.] 1999, no pet'n); *Johnson v. State,* 984 S.W.2d 736 (Tex.App.— Waco 1998, pet'n granted). The three courts, in conducting their analysis, adopted the rule applied in federal courts to assess harm under the federal counterpart to Article 1.13:

A defendant may not effectively waive his right to jury trial without meeting [the requirement of Article 1.13, *unless]* *the record clearly reflects that the defendant "personally gave express consent in open court, intelligently and knowingly."* (Citations omitted; Emphasis added)

*Loveless v. State, supra* at 585; *Trahan v. State, supra* at 941; *Johnson v. State, supra* at 738. We will follow the route taken in *Loveless, Trahan,* and *Johnson* and analyze harm under Rule 44 .2(b).

■ The record in this case shows that appellant clearly understood her right to a jury and chose to relinquish that right. The following exchange occurred when appellant changed her plea to guilty:

(THE COURT): And it's my understanding that the defendant now wants to waive a jury trial as to guilt/innocence and punishment in each case; is that right?

[DEFENSE COUNSEL]: That's correct, Your Honor.

(THE COURT): All right. Is that what you want to do, Ms. Whitmire?

[APPELLANT]: Yes, sir.

(THE COURT): All right. *You understand, of course, that you have a right to be tried by a jury and, in fact, we have a jury panel of some 62, three people who have now been sworn and qualified and are waiting Voir Dire examination,* do you understand that?

[APPELLANT]: Yes, sir.

(THE COURT): And you understand that you have a right to be tried by a jury?

[APPELLANT]: Yes, sir.

(THE COURT): *Do you want to waive trial by jury or be tried by a jury?*

[APPELLANT]: *I want to waive trial by jury.* (Emphasis added)

The record shows that the trial court asked appellant at least three more times whether she understood that she had a right to a jury trial. Each time she answered that she understood. The record also shows that the trial court asked appellant at least once more if she wished to waive her right to a jury. She answered that she did.

The absence from the records in these cases of the signed, written jury waiver required by Articles 1.13 and 1.15 was harmless error under Rule 44.2(b). Appellant's substantial rights were not affected. The record shows that she knew of her right to a jury and expressly, knowingly, and voluntarily relinquished that right in open court on the record. We overrule appellant's first issue.

### *Absence of Written Consent to Stipulate*

Appellant argues in her second issue that the trial court erred in admitting an oral stipulation as to what J.R. Burch, the Department of Public Safety chemist who analyzed the drugs sold by appellant to Whitley and Courtney, would testify. Pursuant to that stipulation, the trial court admitted into evidence the lab reports prepared by Burch. The reports stated the exact weight and the identification of the drugs sold by appellant. Appellant argues that the trial court's failure to comply with the mandatory language of Article 1.15 and to require appellant to sign a waiver of her rights and a consent to stipulate is error and that such error implicated her constitutional rights to confront and to cross-examine Burch. See Amendments VI and XIV; TEX. CONST. art. I, § 10. Thus, she contends that we must analyze the harmfulness of the error under Rule 44.2(a).

Article 1.15 requires that evidence may be stipulated only:

[I]f the defendant in such case consents in writing, in open court, to waive the appearance, confrontation, and cross-examination of witnesses, and further consents either to an oral stipulation of the evidence and testimony, or to the introduction of testimony by affidavits, written statements of witnesses, and any other documentary evidence in support of the judgment of the court. Such waiver and consent must be approved by the court in writing, and be filed in the file of the papers of the cause.

Although the record reflects that the State, appellant, and her trial counsel agreed to the oral stipulation of Burch's testimony, the record contains neither a signed, written waiver of appearance, confrontation, or cross-examination nor a signed, written consent to the oral stipulation. Following his dictation of the stipulation into the record, the district attorney asked appellant's trial counsel, "Is it so stipulated, counsel?" Appellant's trial counsel answered affirmatively. The trial court then asked, "Do you agree to the stipulation, Ms. Whitmire?" Appellant also answered affirmatively.

■ *The State cites Williams v. State,* 483 S.W.2d 460 (Tex.Cr.App.1972), for the proposition that appellant waived error from the admission of the stipulation when she failed to object. *Williams* may be distinguished from the present case because the defendant in *Williams* signed a waiver of rights and a consent to stipulate form. That consent form, however, omitted oral stipulations. The court held that the defendant's failure to object to the admission of an oral stipulation waived error. *Williams v. State, supra* at 461. The court noted, however, that it did not address whether there had been full compliance with the requirements of Article 1.15; the case dealt only with the admissibility of the stipulation. Williams v. State, supra.

■ The language of Article 1.15 requiring a signed, written waiver and consent to stipulate in order to admit stipula-

tions into evidence is mandatory. We agree with appellant that the complete failure to observe the mandatory requirements of Article 1.15 is error. Under former Court of Criminal Appeals' decisions, the failure to comply with any of the requirements of Article 1.15 led to automatic reversal. See *McClain v. State,* 730 S.W.2d 739 (Tex.Cr.App.1987); *Messer v. State,* 729 S.W.2d 694 (Tex.Cr.App.1986). Appellant concedes that the error is now subject to a harm analysis, but contends that Rule 44.2(a) applies. See Cain v. State, supra. The requirement is analogous to the requirement of a signed, written jury waiver. For the reasons stated in our discussion of appellant's first issue, we hold that the requirement in Article 1.15 of a signed, written waiver and consent is a procedural rule that protects a constitutional right. Also, for the reasons stated in our discussion of appellant's first issue, we will analyze the harmfulness of the error under Rule 44.2(b). Appellant's constitutional rights, though implicated by the statute, are not directly involved.

■ Appellant contends that the error in failing to observe the requirements of Article 1.15 and to obtain a signed, written waiver of rights and consent to stipulate is reversible because it renders the lab reports inadmissible. Thus, she argues, the judgments of guilt, both on her pleas of guilty and not guilty, are not supported by evidence, as also required by Article 1.15. Even without the lab reports, however, the evidence is sufficient to support the trial court's findings of guilt on all six charges.

The State put on testimony from Whitley and Courtney. Whitley testified that he bought two "eightballs," with an approximate weight of 3.5 grams each, of methamphetamine from appellant on January 13, 1998. Courtney later testified that he bought an "eightball" of methamphetamine from appellant on May 13, 1998, and that an "eightball" weighs approximately 3.8 grams. He also testified that appellant weighed the drugs after he asked if "her

dope weighed true." One of the bags he purchased weighed "exactly 3.8 grams on [appellant's] scale."

Courtney testified that, on May 21, 1998, he purchased methamphetamine and cocaine from appellant. He testified that appellant weighed a bag of methamphetamine and that the scale showed a weight of "well over four grams. [Appellant] said that's not the true weight because the baggie weighed a gram itself." Courtney testified that, on the same date, appellant gave him a bag of cocaine. He testified that appellant weighed that bag also and that the scales showed a weight of "under a gram counting the package." Finally, Courtney testified that he also "made an order" for an ounce of cocaine on May 21. Courtney returned to appellant's house on May 22, 1998, and purchased the cocaine. He testified that appellant "weighed the baggie that [he] was going to purchase which weighed out to 25 to 26 grams that she stated was cocaine." She then gave the cocaine to Courtney.

Appellant also testified. During her testimony, she admitted to delivering methamphetamine to Whitley on January 13, 1998. She also admitted to delivering methamphetamine and cocaine to Courtney on May 13, 21, and 22, 1998. Appellant never disputed that the substances that she delivered to Whitley and Courtney were methamphetamine and cocaine. Thus, even without the lab reports admitted pursuant to the oral stipulation, the evidence was sufficient to support appellant's convictions. The error of the trial court in failing to observe the requirements of Article 1.15 did not affect appellant's substantial rights. See *Williams v. State, supra* at 461 ("A judicial confession standing alone is sufficient to support appellant's guilty plea under provisions of

Article 1.15 . . . despite any defects in stipulated evidence").[12]

Moreover, even if we were to hold that appellant's constitutional rights to confront and cross-examine witnesses against her were violated with respect to Burch, we would still find no harm under Rule 44.2(a). Appellant confronted and cross-examined the rest of the State's witnesses. As noted above, their testimony, combined with appellant's judicial confessions on the stand, was sufficient to support appellant's convictions. We can also determine beyond a reasonable doubt that the error did not contribute to her convictions or punishment. See Rule 44.2(a).

We overrule appellant's second issue.

### Voluntariness of Appellant's Pleas

■ Appellant argues in her third issue that the trial court erred in accepting her guilty pleas because they were not made intelligently, knowingly, or voluntarily. Appellant concedes that the trial court admonished her in accordance with Article 26.13. She also concedes that she must show that her pleas were not voluntary. *Ex parte Gibauitch*, 688 S.W.2d 868 (Tex. Cr.App.1985). Appellant argues that the record shows that she "did not understand the nature of the acts charged and their relationship to the law." She bases her argument on her testimony that she was a "user" not a "dealer" or a "seller." These statements, she argues, demonstrate her lack of understanding about the elements of delivery of a controlled substance and her culpability under the Health and Safety Code. The context of appellant's testimony, plus other testimony she gave, leads us to hold that appellant intelligently pleaded guilty to the six charges.[13]

12. Our harm analysis is actually compatible with *McClain v. State, supra.* Because the stipulations were the only evidence to support the conviction, the court noted that the evidence was rendered insufficient by the failure to observe the mandatory requirements of Article 1.15; that failure made the stipulations

inadmissible. The court, in effect, found harm from the lack of evidence to support the conviction. *McClain v. State, supra* at 742–43.

13. As noted above, the trial court sua sponte withdrew her guilty pleas to the January 13 offenses and then, sitting as the finder of fact,

A person commits an offense when he knowingly or intentionally delivers a controlled substance listed in either Penalty Group 1 or 2. TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a) & 481.113(a) (Vernon Supp.2000). To "deliver" means "to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp. 2000). The court heard the evidence in this case not only to ensure that appellant's guilty pleas were supported by sufficient evidence but also to determine the appropriate amount of punishment. Appellant admitted to the transfer of drugs from herself to Whitley and Courtney.

Earlier, during cross-examination, appellant testified:

Q: Okay. You said, "I'm not a seller."

A: I'm not a seller.

\* \* \*

A: I'd go get drugs so I could get my—mine out of it. That—I don't consider that selling, okay. I'd get enough for whoever they was getting so I could have mine out of it.

On re-direct examination, appellant denied making a profit:

Q: Now, from going over and getting, did you receive any money for doing that or did you receive dope?

A: At that time, no, I got some dope out of it.

Q: Okay. But you didn't receive any money?

A: No.

Q: None of the money that you took you received?

A: Right.

Q: Or you kept for your own personal use?

A: Right.

Q: That money all went to—

A: Exactly.

Q: —[Another drug dealer's] contact?

A: Right.

Q: And you were doing this for [the other dealer, who was in jail at the time]?

A: Well, and my habit, you know.

Q: And your habit. And that's how you supplied your habit?

A: Yes.

Q: Was by helping—

A: Get somebody some drugs.

Clearly, appellant's testimony that she was not a "seller," only a "user," was intended to win leniency from the trial court by drawing a distinction between selling drugs for profit and selling drugs to support her habit. Appellant admitted to the "delivery" of the drugs by sale to Courtney on all three dates in May. Appellant intelligently, knowingly, and voluntarily pleaded guilty to the May 13, 1998; May 21, 1998; and May 22, 1998, offenses. We overrule her third issue.

*This Court's Ruling*

The judgments of the trial court are affirmed.

---

found her guilty. Except for her first two issues, appellant does not challenge the validity of those two convictions. Her third issue does not apply to them.