Opinion filed June 26, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00124-CR

_____

## CHE PATRICE HUTCHINSON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR21451**

## M E M O R A N D U M   O P I N I O N

Che Patrice Hutchinson waived his right to a jury trial on guilt/innocence and entered an open plea of guilty to the offense of delivery of a controlled substance in an amount that was greater than four grams but less than 200 grams. The trial court accepted Appellant's plea of guilty and assessed punishment at confinement for fifty years in the Institutional Division of the Texas Department of

Criminal Justice. In three points of error, Appellant claims that his right to due process was violated by the use of false and misleading testimony, that he was denied the effective assistance of counsel, and that the trial court erred when it denied his motion to withdraw his waiver of a jury trial. We affirm.

*Background Facts*

Officers of the Early Police Department identified Appellant as a potential distributor of methamphetamine based on information provided by a confidential informant. The confidential informant arranged to purchase methamphetamine from Appellant, and the transaction was recorded by the officers. Almost a year later, Appellant was arrested in the backyard outside his home as part of a drug roundup in Brown County.

On the date of Appellant's arrest, Early police officers recovered various items of evidence from a search of Appellant's person, truck, and home. The officers found hydrocodone pills in Appellant's wallet and marihuana blunts in his pickup. They found a burned marihuana "roach" in his bedroom, approximately 11.35 grams of marihuana in a bag on top of the refrigerator in the kitchen, and scales that indicated distribution activity. The officers also recovered multiple cell phones from Appellant's person and from inside his home. Because many of the items were accessible to Appellant's two children, who were in the home at the time of his arrest, the officers reported the activity to Child Protective Services.

After his arrest, Appellant waived his *Miranda*[1] rights and submitted to police questioning. Appellant discussed his drug-dealing past with Detective Shawn Dibrell; Appellant admitted to selling marihuana, cocaine, and methamphetamine over a five-year period. Appellant stated that he received methamphetamine from a drug cartel several times. Appellant purchased two ounces of methamphetamine per transaction, and he performed around one

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

2

transaction per month for four to five years. Appellant estimated that he purchased and sold a total of one-half of a kilogram of methamphetamine over that time period. Appellant also stated that he was still selling marihuana at the time of his arrest, and he estimated that he had been the middleman in various drug transactions "a thousand times." Detective Dibrell testified that, throughout his interrogation, Appellant had an arrogant attitude as far as dope dealing in general and toward the police.

*False and Misleading Testimony*

In his first point of error, Appellant contends that his right to due process was violated by the State's knowing use of false and misleading testimony and its failure to correct such testimony at punishment.

"The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly." *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). "The use of false testimony at the punishment phase is also a due-process violation." *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). A due process violation may arise when the State elicits false testimony or when the State fails to correct testimony it knows to be false. *Id.* Such testimony need not be perjured to constitute a due process violation; the question is whether the testimony, taken as a whole, gives the factfinder a false impression. *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012). To constitute a due process violation, the use of false testimony must have been material, meaning there is a "reasonable likelihood" that the false testimony could have affected the outcome. *Robbins*, 360 S.W.3d at 459; *Ghahremani*, 332 S.W.3d at 478.

Appellant directs us to four occurrences in which Detective Dibrell gave allegedly false and misleading testimony during the punishment phase of

3

Appellant's trial. Appellant argues that those occurrences were material because there is a reasonable likelihood that they resulted in a harsher punishment, as evidenced by Appellant receiving a fifty-year sentence when the minimum sentence was five years and he was eligible for probation.

First, Appellant points to the State's failure to correct Detective Dibrell when he falsely read from a transcript of text messages that were recovered from Appellant's cell phone. Specifically, Detective Dibrell read aloud that Appellant's outgoing message stated, "Need to smoke meth" when the text message actually read, "Need to smoke bad." Second, Appellant claims that the State failed to elicit testimony regarding certain text messages that would have shown that the text messages referenced a sale of marihuana rather than methamphetamine. Appellant argues that the State's omission of those messages created a false and misleading impression of the facts. According to Appellant, this omission, along with the substitution of the word "meth" for "bad," was material because it portrayed Appellant as preparing for an imminent sale of methamphetamine rather than marihuana. Third, Appellant claims that the State failed to correct Detective Dibrell when he misidentified Appellant as the sender of a message that read, "Did you drop it off[?]" and then misidentified Shane Pinkston as the sender of a reply that read, "Yes and I will be back." According to Appellant, the opposite was true—Appellant received the first message and sent the reply message. Appellant argues that the State's failure to correct this error was material because it portrayed Appellant as the person giving instructions, thereby giving the impression that he was the bigger player in the transaction. Fourth, Appellant complains that the State knowingly elicited false and misleading testimony when, regarding the transcript of the text messages, Detective Dibrell answered, "Yes," after the State asked him whether the dates filled in the gaps between the buy from November 2010 and the bust on August 17, 2011. Appellant argues that such a response was false because

4

the dates in the transcript of the text messages covered less than one month's time rather than the near ten-month span that was referenced as the "gaps" in time. Appellant claims that this testimony was material because it gave the impression that the text messages covered a bigger time frame than they actually did and "amplified their importance in assessing a proper punishment."

We have reviewed all of the evidence in the record, and we disagree with Appellant's contention that Detective Dibrell's testimony left a false impression of the evidence. At the outset, we note that all of the text messages read aloud by Detective Dibrell at punishment were admitted into evidence and available for the trial judge to review during his assessment of Appellant's punishment. Moreover, the purpose of Detective Dibrell's reading of the text messages was to show specific examples of Appellant's dealings with narcotics. Any mistake that arose from an erroneous reading related only to the type of drugs being sold in a single transaction; Appellant readily admitted that he had been involved in numerous transactions involving methamphetamine and marihuana, among other narcotics, as both a buyer and a seller. The fact that Detective Dibrell answered affirmatively to whether the dates filled a longer time period was not misleading in light of Detective Dibrell's testimony that he believed Appellant was still actively involved in the use and distribution of both methamphetamine and marihuana from the date he sold to the informant to the date he was arrested for selling narcotics.

Even if we assume that the aforementioned instances were likely to leave the trial judge with a false impression of the evidence, we find that such testimony was immaterial to Appellant's sentence in light of the ample evidence of Appellant's involvement in the distribution of narcotics, including both methamphetamine and marihuana. The record contains evidence from various sources that demonstrates Appellant's criminal behavior related to drug transactions, including Appellant's past criminal history, the amount of drugs he trafficked, the frequency of the drug

transactions, the types of drugs he trafficked, his attitude toward the police, and the fact that he had obtained drugs from a drug cartel. Given this evidence, we cannot conclude that there is a reasonable likelihood that the errors complained of by Appellant affected his sentence. We overrule Appellant's first point of error.

*Ineffective Assistance of Counsel*

In his second point of error, Appellant argues that he was denied his Sixth Amendment right to effective assistance of counsel. Appellant contends that his trial counsel was deficient because (1) he failed to properly investigate the case before trial, (2) he was unprepared for the guilt/innocence phase, and (3) he failed to object to inadmissible evidence during the punishment phase.

To determine whether Appellant's counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694; *Hernandez*, 726 S.W.2d at 55. We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

"Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). This is true when evaluating the question of deficient performance where counsel's reasons for failing to do something do not appear in the record. *Id.* The Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). If trial counsel has not had the opportunity to explain his actions, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Appellant first contends that counsel's performance was deficient because counsel failed to properly investigate the case; namely, counsel did not employ an independent chemist to reweigh the methamphetamine recovered by police despite Appellant's insistence that the substance weighed less than four grams. Appellant argues that his trial counsel's failure to have the methamphetamine reweighed was prejudicial because it altered the plea bargaining process. According to Appellant, had the weight been less than four grams, there is a reasonable probability that Appellant would not have pleaded guilty because the State's offer of twenty years would have been the maximum punishment available if the factfinder believed that the substance weighed less than four grams. Alternatively, even if the weight had been unfavorable, Appellant contends that he would have been able to make an informed decision as to the State's offer.

Under *Strickland*, an attorney has the duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. We consider an attorney's decision to limit the scope of his pretrial investigation with "a great deal of deference to the

attorney's judgment, looking to the reasonableness of the decision in light of the totality of the circumstances." *Cantu v. State*, 993 S.W.2d 712, 718 (Tex. App.—San Antonio 1999, pet. ref'd). Appellant's trial counsel explained at the hearing on Appellant's motion for new trial that one of the reasons he chose not to have the substance reweighed was to avoid additional charges against Appellant; the State had represented to counsel that it was likely to file an additional charge of conspiracy against Appellant if the substance was reweighed. Moreover, counsel could have reasonably concluded that reweighing the substance was unnecessary based on the evidence that the substance weighed over four grams. Appellant's complaint about the weight of the methamphetamine centered around the fact that the weight was so close to the minimum required for his charge—four grams—that there could have been a discrepancy in the true weight based on the weight of the packaging that held the methamphetamine. Detective Dibrell testified that, before the methamphetamine was sent off for testing, law enforcement determined that the weight of the substance, with packaging included, was 4.55 grams. The lab technician who conducted the testing of the substance testified that the substance had a net weight of 4.09 grams, meaning that was the weight without any packaging. Given the lack of evidence that the methamphetamine weighed less than four grams, and trial counsel's intent to avoid an additional charge against Appellant, we cannot conclude that counsel's decision not to have the substance reweighed by an independent chemist was unreasonable in light of the totality of the circumstances.

Appellant next contends that he received ineffective assistance at trial due to his trial counsel's alleged lack of preparedness. Specifically, Appellant complains that his trial counsel (1) arrived an hour late for court on the day Appellant's case was set for trial and then informed the court that he wished to withdraw from the case and that the case needed to be reset for consideration of other important

8

issues, (2) stated on the record that he was unfamiliar with the local practices in Brown County in that he erroneously believed that the case would be reset for sentencing after Appellant entered his plea, and (3) falsely informed Appellant that he could challenge the weight of the controlled substance at punishment if Appellant pleaded guilty.

Appellant, however, has failed to demonstrate that his trial counsel's actions at trial caused him any prejudice. Although counsel was late and was unfamiliar with the local practices in Brown County, he and Appellant received the relief they sought from the trial court: they received a resetting of the punishment hearing so that counsel could have witnesses available to testify on Appellant's behalf. Counsel also stated on the record that Appellant wished to withdraw his plea. Furthermore, counsel did not indicate that he wished to withdraw from the case but, rather, that he believed Appellant's family wanted to employ other counsel. Then Appellant stated that he did not say he wanted to fire his lawyer. Appellant has not claimed that counsel was unprepared when the subsequent punishment hearing took place. We note that counsel called multiple witnesses to testify on Appellant's behalf and that the record does not indicate counsel was unprepared for the punishment phase. Moreover, Appellant's trial counsel has denied that he ever told Appellant that the weight could be challenged at punishment, and counsel's testimony demonstrates that counsel understood that the weight issue had no bearing on punishment after Appellant pleaded guilty to the charged offense. While Appellant may have misunderstood his discussion with trial counsel, we cannot conclude that trial counsel's representation fell below an objective standard of reasonableness in light of counsel's testimony. Further, even if counsel's actions were deficient, Appellant has failed to demonstrate that there is a reasonable likelihood the outcome of his trial would have been different but for counsel's errors.

9

Appellant also claims ineffective assistance of counsel at the punishment hearing. Specifically, Appellant complains of trial counsel's failure to object to the admission of Appellant's statements made during the custodial interrogation following his arrest, the admission of evidence allegedly seized illegally from his home, and the admission of the transcript of the text messages. In addition, Appellant complains of trial counsel's decision to offer letters from certain character witnesses when those letters were excluded on hearsay grounds.

Appellant argues that the recording of his statements made during custodial interrogation was inadmissible because it lacked the proper foundation and because the recording device was not shown to be capable of making an accurate recording. But the record is silent as to any potential trial strategy that counsel could have employed in failing to object to the recording on foundation or authentication grounds. Because the record is undeveloped on the subject, we are not inclined to speculate as to counsel's reasons for failing to object to the recording of Appellant's statements made during custodial interrogation. *See Goodspeed*, 187 S.W.3d at 393–94. Trial counsel could have reasonably determined, on the basis of listening to the audio recording, that Detective Dibrell had personal knowledge as to the contents of the recording and that the recording was what he claimed it to be. *See* TEX. R. EVID. 901. As such, Appellant has failed to show that counsel's failure to object to the recording was so outrageous that no competent attorney would have engaged in it. *See Garcia*, 57 S.W.3d at 440.

Appellant also argues that the marihuana seized at Appellant's home was inadmissible as the fruit of an unlawful search. A motion to suppress is the proper vehicle to challenge the fruits of an allegedly unlawful search. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998). In order to establish ineffective assistance, an appellant must prove that a motion to suppress, had it been filed,

10

would have been granted. *Id.* Therefore, an appellant must develop facts and details of the search sufficient to conclude that the search was invalid. *Id.* at 957.

In this case, trial counsel testified that he made a judgment call not to file a motion to suppress because he believed that the search was lawful based on the information contained in the offense report. Trial counsel stated that he believed the officers were entitled to enter Appellant's home based on the exigency of the situation and in the interests of officer safety. Detective Dibrell testified at punishment that the officers entered the home to conduct a search after having heard yelling and screaming coming from inside. The officers could smell the odor of burned marihuana in the residence upon making entry. Thereafter, the officers obtained written consent from Appellant and his wife to search their home, and the officers recovered the marihuana at issue from the top of the refrigerator in the kitchen during this subsequent search. Detective Dibrell denied ever threatening to call CPS in an effort to obtain consent to search the house. At the hearing on Appellant's motion for new trial, Appellant did not recall Detective Dibrell to testify to the events surrounding the search of Appellant's home. Appellant did, however, call his wife—Melanie Hutchinson. Melanie testified that officers busted in her front and back door while her husband was outside. Melanie also testified that she signed the consent to search the home after the home was already searched and that she only signed the consent because she was terrified and because the officers said they had called CPS. Although Melanie's testimony contradicted some of Detective Dibrell's testimony, it did not establish that the search was unlawful. *See Turrubiate v. State*, 399 S.W.3d 147, 155–56 (Tex. Crim. App. 2013) (holding that officer who enters home without a warrant because he had probable cause to believe contraband was in the home, smelled marihuana, identified himself to the occupant, and believed a child's health and safety was endangered by presence of drugs could give rise to exigent circumstances

11

justifying warrantless entry). Given the lack of a fully developed record on this issue, we cannot conclude that counsel's decision not to file a motion to suppress constituted ineffective assistance.

Appellant further complains of his trial counsel's failure to object to the transcript of the text messages that Detective Dibrell read aloud in his testimony. Although trial counsel objected to the text messages on relevancy grounds, Appellant contends that counsel should have also objected on grounds of hearsay and lack of authentication. Additionally, Appellant alleges that trial counsel failed to object to, or bring out on cross-examination, the inaccurate recitation of the text messages by Detective Dibrell, as described in Appellant's first point of error.

During his testimony at the hearing on the motion for new trial, trial counsel's only reference to the text messages concerned the fact that the text messages reflected certain prejudicial facts against Appellant related to infidelity in Appellant's marriage and some allegations about drug sales. Counsel made no reference to his strategies with respect to the admission or exclusion of the text messages and the possibility of an objection on hearsay or authentication grounds. As we have discussed, when the record is undeveloped as to an allegation of ineffective assistance, we will not speculate as to counsel's trial strategies in taking the complained-of action. Given that the cell phone from which the text messages were recovered was found in Appellant's home and that Appellant never denied that he wrote the outgoing messages from his phone, counsel could have reasonably concluded that the messages fell under the statement-against-interest exception to the hearsay rule and that they could be properly authenticated. *See* TEX. R. EVID. 803(24). In addition, counsel could have reasonably determined that the inaccurate recitation of text messages had a minor effect on the proceedings and that the trial judge did not misunderstand the evidence based on those inaccuracies. Accordingly, we conclude that counsel's decision not to object to

12

the admission of the text messages was not so outrageous that no competent attorney would have engaged in such conduct. *See Garcia*, 57 S.W.3d at 440.

Finally, Appellant claims that his trial counsel was ineffective when he attempted to offer seventeen letters from character witnesses rather than having those witnesses give live testimony or providing those letters to the probation officer in charge of Appellant's presentence investigation report. These letters were excluded on hearsay grounds, and trial counsel admitted that he thought the letters would be admitted based on his belief that such was the custom in Bexar County where trial counsel's practice is located. Four of the authors of the excluded letters testified at the hearing on Appellant's motion for new trial that they would have testified to Appellant's good character had they been called to do so during the punishment hearing.

At the punishment hearing, Appellant's trial counsel called and questioned four witnesses who testified to Appellant's good character and asked the court to consider leniency in Appellant's sentence. Given counsel's clear effort in providing the court with multiple character witnesses who testified in Appellant's favor, we cannot conclude that counsel's failure to successfully admit into evidence the letters related to Appellant's good character constituted representation that fell below an objective standard of reasonableness. Moreover, Appellant has failed to establish a reasonable probability that his punishment would have been different had the letters been admitted or had every author given live testimony in light of the similarity in nature of the excluded evidence to the testimony that was, in fact, elicited during punishment. Accordingly, we hold that Appellant has failed to establish that he was denied the effective assistance of counsel. We overrule Appellant's second point of error.

*Jury Waiver*

In his third point of error, Appellant claims that the trial court should have allowed him to withdraw his waiver of a jury trial because his written waiver was invalid.

Both the United States Constitution and the Texas Constitution guarantee the right to a trial by jury. U.S. CONST. amend. VI; TEX. CONST. art. I, § 15; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.12 (West 2005). "As a matter of federal constitutional law, the State must establish, on the record, a defendant's express, knowing, and intelligent waiver of jury trial." *Hobbs v. State*, 298 S.W.3d 193, 197 (Tex. Crim. App. 2009). Article 1.13 of the Texas Code of Criminal Procedure sets out the required formalities of a jury waiver in Texas. *See* CRIM. PROC. art. 1.13 (West Supp. 2013). Article 1.13 provides, in relevant part, that the defendant "shall have the right, upon entering a plea, to waive the right of trial by jury, conditioned, however, that . . . the waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the state." *Id.*; *see Johnson v. State*, 72 S.W.3d 346, 347 (Tex. Crim. App. 2002).

Once a defendant waives his right to a jury trial in compliance with the statute, he does not have an unfettered right to withdraw this waiver. *Hobbs*, 298 S.W.3d at 197. The defendant must establish, on the record, that his request to withdraw his jury waiver has been made sufficiently in advance of trial such that granting his request will not (1) interfere with the orderly administration of the business of the court, (2) result in unnecessary delay or inconvenience to witnesses, or (3) prejudice the State. *Id.* at 197–98. This subsequent request to withdraw the waiver is subject to the trial court's discretion, and we will not overturn a denial of such a request absent a clear showing that the trial court abused its discretion in doing so. *Id.* at 198.

14

In this case, Appellant sought to withdraw his written jury waiver on the day he was set to enter his open plea and go to trial. The trial court denied Appellant's request, and Appellant entered a plea of guilty. Although Appellant complains of the trial court's denial of his motion to withdraw his jury waiver, he frames his argument in terms of the validity of his waiver under the requirements set forth in Article 1.13. Appellant makes no reference to whether his request to withdraw his waiver was made sufficiently in advance of trial such that it would not have caused interference with the orderly administration of the court, resulted in unnecessary delay or inconvenience to witnesses, or prejudiced the State. Accordingly, we limit our review to the validity of Appellant's jury waiver, rather than whether the trial court abused its discretion in denying a request to withdraw the jury waiver.

The judgment in the instant case recites that Appellant, Appellant's attorney, and the State's attorney agreed in open court and in writing to waive a jury trial. In addition, the record contains a written waiver of jury trial that is approved by the court and is signed by Appellant, his attorney, and the State's attorney. However, the record before us does not show that Appellant made his jury waiver in person or in open court. Appellant claims that, at the time the written waiver was filed, the case had been set for pretrial hearings but that Appellant was not present in the courtroom and no hearing was held thereon. The only reference to the jury waiver that is depicted in the record, other than the judgment and the written waiver itself, appears where Appellant attempted to withdraw his waiver just before entering his plea of guilty. The State has not disputed that Appellant's waiver was not, in fact, made in person and in open court. By failing to observe the mandatory requirements of Article 1.13, the trial court erred because Appellant's jury waiver

15

was not conducted in person and in open court. *See Johnson*, 72 S.W.3d at 347; *Whitmire v. State*, 33 S.W.3d 330, 332–33 (Tex. App.—Eastland 2000, no pet.). [2]

Nevertheless, Appellant is not entitled to a reversal because he has failed to establish that he was harmed by the trial court's error. In the context of a jury waiver that fails to satisfy the requirements of Article 1.13, we must disregard such an error if it does not affect an appellant's substantial rights. *See* TEX. R. APP. P.44.2(b); *Ex parte McCain*, 67 S.W.3d 204, 209–10 (Tex. Crim. App. 2002). Thus, in this case, we must ascertain whether Appellant understood his right to a trial by jury and knowingly and intelligently waived that right before his bench trial began. *See Johnson*, 72 S.W.3d at 348–49.

The Court of Criminal Appeals has stated that the lack of a valid waiver under Article 1.13 is not harmful when the record in another way reflects that a defendant waived his right to a jury trial. *Id.* at 349. For example, in *Johnson*, the court stated that the recitation in the judgment that the defendant had "waived trial by jury" was sufficient to show the defendant had the requisite knowledge of his right to a jury trial. *Id.* The court noted that the defendant never alleged that he was unaware of his right to a jury trial, and the record did not indicate any lack of knowledge of the defendant's right to a jury trial. *Id.* The court reasoned that, with no affirmative showing of falsity, the recitation in the judgment was sufficient to show a valid waiver. *Id.*; *see also Vega v. State*, 707 S.W.2d 557, 559 (Tex. Crim. App. 1984); *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984). In other words, to justify a finding of harm, there must be some affirmative evidence in the record—not just a lack of evidence—that a defendant's waiver was not made knowingly and intelligently. *Johnson,* 72 S.W.3d at 349.

---

[2]Appellant previously filed a motion to abate this appeal so that the record could be clarified regarding his jury waiver. We overruled the motion to abate the appeal. In his brief, Appellant renewed his motion to abate the appeal in the event this court applied a presumption of regularity to the record before us. We overrule Appellant's renewed motion to abate the appeal.

As we previously discussed, the judgment in this case recites that Appellant "agreed in open court and in writing to waive a jury in the trial of this cause and to submit it to the Court." As the Court of Criminal Appeals has stated, "The very use of the term 'waive' presumes knowledge, because 'to waive a right one must do it knowingly—with knowledge of the relevant facts.'" *Id*. Moreover, the presence of a written waiver that is signed by Appellant and his counsel indicates his knowledge of his right to a jury trial. The fact that the record does not contain direct proof that a waiver was made in person and in open court suggests that the requirements of Article 1.13 were not satisfied, but it does not address the question of harm. *See Johnson*, 72 S.W.3d at 349; *Whitmire*, 33 S.W.3d at 330.

Furthermore, there is some evidence in the record that Appellant was aware of his right to a jury trial. Appellant's request to withdraw his previous jury waiver indicates his knowledge of his right to a jury trial because, in making the request to withdraw the waiver, Appellant never claimed that he was unaware of or misunderstood his right to a jury trial. In addition, the record shows that the trial court, before accepting Appellant's plea of guilty during the open plea, confirmed with Appellant that Appellant understood his right to a jury, was aware of the waiver he filed, and understood the effects of a guilty plea. Though this evidence may be insufficient, without more, to indicate that a waiver was properly executed, it does constitute some evidence that Appellant's previous written waiver was made knowingly and intelligently. Given this evidence, in addition to the recitation of waiver in the judgment, we cannot conclude that the trial court's error affected Appellant's substantial right to a jury trial. Accordingly, we overrule Appellant's third point of error.

17

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


June 26, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J. and Bailey, J.